UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

———————————————————————

AP PRODUCTS, INC., a Michigan corporation,
200 Jay Street
Coldwater, MI 49036

        Plaintiff,

vs.                                                          File No. 1:13-cv-555

RONALD L. CHESNUT, an individual,
448 Brooklawn Drive
Banning, CA 92220

        Defendant.

———————————————————————

*Prepared by:*
BIRINGER, HUTCHINSON, LILLIS,
BAPPERT & ANGELL, P.C.
Attorneys for Plaintiff
By: Charles R. Bappert (P41647)
Century Bank and Trust Building
100 West Chicago Street
Coldwater, MI 49036-1897
Phone: (517) 279-9745 ksb c\17992.9
Fax:    (517) 278-7844
Email: Charles.Bappert@coldwaterlaw.com

# COMPLAINT

*For its complaint, Plaintiff states*

## PARTIES

1.      AP Products, Inc. is a Michigan corporation, in good standing, whose principal place of business is 200 Jay Street, Coldwater, Michigan. AP Products is the exclusive licensee of Patent No. 6,609,766 which is the subject matter of a license agreement with defendant shown at Exhibit 1.

2.      Ronald L. Chesnut, is a citizen and resident of California, conducting business in California. Mr. Chestnut is an inventor and owner of Patent No. 6,609,766 who has made exclusive assignment of rights in that patent to plaintiff for a term of years remaining on the life of the patent. The patent expires in 2023. (Exhibit 2. Chesnut Patent.)

3.      During the term of the license agreement between the parties and identified in Exhibit 1, AP Products may sue in its own name in enforcing the Patent No. 6,609,766 against infringement.

## JURISDICTION

4.      Under the terms of 28 USCS §1338(a), the federal district courts have original jurisdiction of any civil action arising under any act of Congress relating to patents.

5.      Under 28 USCS §1332(a), this court also has diversity jurisdiction because the parties are citizens of different states, and the minimum damage claim alleged in plaintiff's claim, among other claims, includes a lost margin value that exceeds $75,000 over the life of the license agreement repudiated by defendant. (Exhibit 11. Affidavit of Thomas Manning.)

## COMMON ALLEGATIONS

6.      On April 5, 2006, plaintiff and defendant entered into a license agreement whereby defendant gave plaintiff the exclusive right to manufacture, have manufactured, use and sell the invention of Patent No. 6,609,766 which defendant owned. The term of the agreement coincided with the life of the patent. The patent expires August, 2023. (Exhibit  1).

7.      Plaintiff licensee agreed to pay to defendant a royalty of five percent as measured by a base price established for the unit. For financial benefit of defendant, plaintiff AP Products agreed to use units shipped as the benchmark for determining the royalty. AP Products also agreed to use the base price as the benchmark for the amount of royalty regardless of whether the units were shipped with discounts or free of charge as promotional items to establish goodwill with customers. In paragraph 2.3, licensee agreed to exercise "reasonable diligence and its best efforts in exploiting the licensed patent." Paragraph 3.3 requires a payment of $30,000 for any fiscal year ending March 31, which includes royalties paid to date plus dollar amounts paid by licensee out of its own funds to meet minimum requirements. (Exhibit 1. License Agreement.)

8.      The subject matter of the license agreement and Mr. Chesnut's invention is a braking system for a first vehicle towing a second vehicle which allows the driver of the first vehicle to remotely control the actual braking system of the second vehicle. The application is universally used in the motor home market within the recreational vehicle (RV) industry. (Exhibit 2. Patents of Chesnut.)

2

9.     Concurrent with the acquisition of this right from defendant Ronald Chesnut, AP Products also purchased a brake control patent and the trade name Unified Tow Brake from U.S. Gear Corporation which together with the licensed invention of Ronald Chesnut, permitted AP Products to manufacture, assemble, and box a Unified Tow Brake system that enjoys a reputation of primacy in the motor home market of the RV industry. (Exhibit 3. Intellectual Property of AP Products.)

10.    Prior to the creation of the agreement with AP Products, defendant Ronald Chesnut was party to a similar agreement with U.S. Gear Corporation. Defendant Ronald Chesnut also had a stand alone consulting agreement with U.S. Gear which gave Mr. Chesnut an opportunity to assist in the promoting of his patent under license to U.S. Gear. Following the creation of the license with AP Products Ronald Chesnut and AP Products entered into a consulting agreement, drafted by Mr. Chesnut, for similar purposes. (Exhibit 12. Consulting Agreement.)

11.    After a year of the commencement of the license agreement shown at Exhibit 1, the consulting agreement shown at Exhibit 12 expired of its own terms. AP Products declined to renew it. From that point on, relations between licensor Ronald Chesnut and AP Products soured because Mr. Chesnut perceived that in not renewing the consulting agreement AP Products, by its owner Thomas Manning IV, had entered into a "secret alliance" with persons at U.S. Gear to cheat Mr. Chesnut of income and income potential. (Exhibit 5. Disparagements, Defamations, Infringements of Ronald Chesnut at p 5)

12.    Thereafter, Mr. Chesnut disputed the annual account of what he was paid, and claimed that he was being cheated of royalty payments, despite provision to him of accurate accountings which demonstrated compliance with the license agreement. Mr. Chesnut's use of the 1099s he received for each year instead of basing his allocations on the fiscal year payments has led to his repeated misunderstandings regarding the dollar amounts owed to him. (Exhibit 10. Accountings.)

13.    By 2010, Mr. Chesnut notified Mr. Manning that he had designed and invented a modification to the Unified Tow Brake which would make manufacture cheaper and installation simpler. However, prior to a work up of a prototype of this alleged upgrade, Mr. Chesnut demanded that AP Products renegotiate the executory license agreement to include a dramatic increase in royalty money to Mr. Chesnut. AP Products declined to restructure the executory license agreement.

14.    Thereafter, Mr. Chesnut began soliciting interest in the market place for his idea of an upgraded version of the Unified Tow Brake. In the last several months these solicitations have intentionally and wrongly:
       i.     repudiated the exclusive agreement with AP Products; (Exhibit 6 at pp 1-6)
       ii.    disparaged the subject matter and licensee of the exclusive agreement; (Exhibit 7 at pp 5-7)

    iii.   breached a duty not to compete with AP Products with his own patent; (Exhibit 7 at pp 1-4)

    iv.   infringed on Patent No. 6,609,766; (Exhibit 5 at pp 1-9) and

    v.   appropriated the protected trademark name "Unified Tow Brake" (Exhibit 7 at p. 4)

(Exhibit 4. "Smart Brake". Exhibit 5. Infringement. Exhibit 6. Repudiations/Breaches of Chesnut. Exhibit 7. Tortious Breaches of Duty of Chesnut.)

15.    From time to time, AP Products have sent cease and desist letters to defendant Ronald Chesnut. From time to time, Ronald Chesnut have sent notices of unilateral termination of the license agreement without breaches identified in the agreement which would entitle him to do so. (Exhibit 9. Cease and Desist Letters.)

16.    AP Products by continuously making royalty payments and minimum payments annually to Mr. Chesnut and to otherwise continue to manufacture and sell the licensed Tow Brake Kit which includes defendant's assigned patent and patents and trademarks owned by AP Products has always remained in compliance with the license agreement with defendant Ronald Chesnut. On April 15, 2013, AP Products made a cash payment to Mr. Chesnut of some $14,000, which together with twelve months royalty payments amounted to the $30,000 minimum required by the license agreement. (Exhibit 10. Accountings.)

17.    As a result of the use of AP Products' customer list and part numbers by Mr. Chestnut and his false, defamatory, and disparaging statements to those customers and to the marketplace that the subject matter of his own license with AP Products is obsolete, and that those customers of AP Products must cease doing business with it and thereafter purchase the alleged upgraded version without having to pay the AP Products margin, Mr. Chesnut has caused financial harm and harm to reputation to AP Products as a respected marketer and seller of RV products in the industry. (Exhibit 4. "Smart Brake".)

18.    A state of confusion exists among plaintiff's customers and other persons in the marketplace which has caused or will cause an appreciable downturn of sales by plaintiff of the licensed product despite the fact that the aftermarket for recreational vehicles has improved and is improving since the economic downturn of 2008. (Exhibit 11. Affidavit.)

## COUNT I
## INFRINGEMENT UNDER 35 USCS §271(b)

19.    Plaintiff repeats and realleges allegations 1 through 18.

20.    Prior to repudiation of the license agreement with plaintiff, without plaintiff's consent, defendant designed, constructed, and promoted the sale of a Unified Tow

Brake which incorporated the subject matter of Patent No. 6,609,766. (Exhibit 5. Disparagements, Defamations, Infringements of Chesnut.)

21.   These acts constitute infringement under 35 USCS §271(a).

## RELIEF REQUESTED

WHEREFORE, plaintiff prays for:

(a)   Preliminary and permanent injunction to stop infringement;
(b)   Accounting for profits;
(c)   Judgment for damages, interest and costs; and
(d)   Punitive damages and reasonable and actual attorney fees.

## COUNT II
## BREACH OF CONTRACT

22.   Plaintiff repeats and realleges allegations 1 through 21.

23.   The license agreement at Exhibit 1 speaks for itself in stating a valid executory agreement the breach for which this Court may give a remedy.

24.   In marketing his proposed "Smart Brake" by incorporating the consideration of Patent No. 6,609,766, to plaintiff, defendant has breached the agreement.

25.   As a legal result, plaintiff has suffered damages which include lost profit, lost sales which create larger minimums it is obliged to pay out of its own funds at the end of the fiscal year, and loss of customer goodwill and business reputation.

## RELIEF REQUESTED

WHEREFORE, plaintiff prays for:

(a)   Preliminary and permanent injunction to stop infringement;
(b)   Accounting for profits;
(c)   Judgment for damages, interest and costs; and

## COUNT III
## TORTIOUS BREACH OF CONTRACT

26.   Plaintiff repeats and realleges 1 through 25.

27.   Notwithstanding his duty of good faith and the duty to refrain from interfering with plaintiff's performance, defendant had a duty not to disparage plaintiff in the conduct of his business.

5

28.  In publicizing what defendant identifies as his "hostile takeover" of the marketing and sale of the subject matter of the license agreement between the parties, he has intentionally created confusion and harm regarding plaintiff's business standing and customer goodwill regarding all products which plaintiff markets and sells.

29.  This harm to customer goodwill is a "invaluable intangible" which is directly and legally caused by defendant's publicity and actions.

30.  As a legal result, damages have occurred to plaintiff.

## RELIEF REQUESTED

WHEREFORE, plaintiff prays for:

(a)  Preliminary and permanent injunction to stop infringement;
(b)  Accounting for profits;
(c)  Judgment for damages, interest and costs; and
(d)  Punitive damages and reasonable and actual attorney fees.

## COUNT IV
## BUSINESS DEFAMATION

31.  Plaintiff repeats and realleges allegations 1 through 30.

32.  Defendant's statements that AP Products, Inc. is marketing and selling a deficient and obsolete product has falsely defamed AP Products in the conduct of its business and has deterred others from dealing with AP Products.

33.  These false statements constitute defamation *per se.*

34.  Plaintiff has suffered loss of business reputation and loss of customer goodwill as a direct and legal result of these false statements of defendant.

## RELIEF REQUESTED

WHEREFORE, plaintiff prays for:

(a)  Preliminary and permanent injunction to stop infringement;
(b)  Accounting for profits;
(c)  Judgment for damages, interest and costs; and
(d)  Punitive damages and reasonable and actual attorney fees.

**COUNT V**
**PRODUCT DISPARAGEMENT**

35.     Plaintiff repeats and realleges allegations 1 through 34.

36.     In making the disparaging statements regarding the subject matter of the license agreement between plaintiff and defendant, defendant intended to harm the business interests of plaintiff so that plaintiff's customers will purchase his allegedly upgraded version of the Tow Brake. (Exhibit 5. Disparagements, Defamations, Infringements of Chesnut.)

37.     The statements are false and injurious to the pecuniary interest of AP Products.

38.     Plaintiff has suffered financial damage as a result.

**RELIEF REQUESTED**

WHEREFORE, plaintiff prays for:

(a)     Preliminary and permanent injunction to stop infringement;
(b)     Accounting for profits;
(c)     Judgment for damages, interest and costs; and
(d)     Punitive damages and reasonable and actual attorney fees.

RESPECTFULLY SUBMITTED,

AP PRODUCTS, INC.

Dated: May 17, 2013          By:___/s/ Thomas Manning_____
                             Thomas Manning IV
                        Its:     President

BIRINGER, HUTCHINSON, LILLIS,
BAPPERT & ANGELL, P.C.
Attorneys for Plaintiff

Dated: May 17, 2013          By:__/s/ Charles R. Bappert_____
                             Charles R. Bappert

7

STATE OF MICHIGAN      )
                                )ss
COUNTY OF BRANCH     )

      On May 17, 2013, before me, a Notary Public, in and for said County, personally appeared Thomas Manning IV, President of AP Products, Inc. and made oath that he has read the foregoing Complaint by him subscribed and knows the contents thereof and that the same is true of his own knowledge except as to those matters therein stated to be on his information and belief and as to those matters he believes it to be true.

                          __/s/ Charles R. Bappert_____
                               Charles R. Bappert
                          Notary Public, Branch County, Michigan.
                          My commission expires: 2/19/2017